```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  11/19/2024  
```

ZYNC MUSIC GROUP, LLC,

                Plaintiff,

-against-

ROUND HILL MUSIC ROYALTY FUND II LP,

                Defendant.

24 Civ. 3664 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Zync Music Group, LLC ("Zync"), brings this action against Defendant, Round Hill Music Royalty Fund II LP ("RHM"), alleging, *inter alia*, breach of contract, fraudulent inducement, and trademark infringement under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* *See generally* Am. Compl., ECF No. 47. RHM seeks an order compelling an appraisal and staying this action pending appraisal. ECF Nos. 29–31; *see also* ECF Nos. 36–37, 40–42. For the reasons stated below, the motion is GRANTED.[1]

## BACKGROUND

    In 2017, RHM, the private equity arm of music publishing and production company Round Hill Music (together with RHM, "Round Hill"), contracted with Zync, a music licensing and publishing company led by Marisa Baldi and Sanne Hagelsten, to purchase Zync's then-existing assets. Am. Compl. ¶¶ 18, 20, 27, 33. Concurrently with that transaction, RHM and Zync entered a joint tenancy agreement (the "JT Agreement") whereby they would work together to develop musical talent and acquire the rights to musical works, with Zync responsible for day-to-day operations and RHM providing the funding and its existing operational

---

[1] RHM's motion for oral argument, ECF No. 45, is DENIED.

infrastructure.  *Id.* ¶¶ 35–36, 40–41; JT Agreement, ECF No. 47-2.  The JT Agreement had an initial term of three years, which could be extended by the parties for two additional years.  Am. Compl. ¶¶ 37–38; JT Agreement at 3.[2]

The JT Agreement specified that all rights acquired during the term of the contract (the "Term Assets") would be jointly owned in equal part during the term by RHM and Zync.  Am. Compl. ¶ 42; JT Agreement at 9.  During that time, the joint venture would also be able to use Zync's registered trademark, ZYNC (the "Mark"), in exchange for a licensing fee.  Am. Compl. ¶¶ 21, 60; JT Agreement at 7.  Once the term ended, RHM would be required to purchase Zync's interests in the Term Assets for the "Term Asset Purchase Price."  Am. Compl. ¶ 64; JT Agreement at 9.  Simultaneously, RHM would also buy Zync's interests in its website and the Mark for $200,000.  Am. Compl.  ¶¶ 64–66; JT Agreement at 9.

In accordance with the JT Agreement, the Term Asset Purchase Price would be determined through an appraisal process.  JT Agreement at 9.  Within fifteen days after the end of the term, RHM and Zync would "each appoint a reputable third[-]party appraiser to determine the Term Asset Purchase Price."  *Id.*  If the two appraisers agreed on a value, they would "jointly render a single written report stating that value."  *Id.*  If they disagreed, they would "each render a separate written report" and "appoint a third independent appraiser," who would "appraise the Term Asset Purchase Price, determine the value thereof," and "render a written report of his opinion."  *Id.*  That third-party appraiser's valuation would be the "definitive" Term Asset Purchase Price unless it were higher than the first two appraisals, in which case the higher of the first two appraisals would govern, or unless it were lower than the first two appraisals, in which case the lower of the first two appraisals would govern.  *Id.* at 9–10.

---

[2] The Court's citations to the JT Agreement are to the ECF page number.

Soon after the JT Agreement's term began, friction emerged between Zync and Round Hill. Baldi and Hagelsten found Round Hill's leadership difficult to work with and discovered that Round Hill's records were poorly maintained and its accounting practices disorganized. *See* Am. Compl. ¶¶ 82–87, 103–07. Ultimately, these issues contributed to Hagelsten's departure from Zync, and she and RHM entered into a mutual release agreement. *Id.* ¶¶ 107–09. During this time, RHM allegedly failed to provide Zync payments it was owed under the JT Agreement. *Id.* ¶¶ 101–02, 111–17. Zync alleges that RHM used this nonpayment as a tactic to leverage a renegotiation of the JT Agreement. *Id.* ¶¶ 116–17. The new agreement, which was finalized in 2020, imposed an incentive structure whereby bonuses would be credited to the Term Asset Purchase Price if the joint venture exceeded certain income benchmarks, and payments would be debited from the Term Asset Purchase Price if other income benchmarks were not met. *Id.* ¶¶ 119–23, 135, 138, 140–44; *see also* ECF No. 47-3.

In October 2022, the term of the JT Agreement ended. Am. Compl. ¶ 160. Although RHM and Zync were each contractually obligated to appoint a third-party appraiser within fifteen days, the parties continued to "informally" operate as joint tenants with respect to the Term Assets until April 2023, when Round Hill fired Baldi. *Id.* ¶ 181. At that time, both parties agreed to appoint appraisers and submit their appraisal reports by May 10, 2023, fifteen days from the date Baldi left Round Hill. *Id.* ¶ 182. Because the appraisers did not agree on the Term Asset Purchase Price, the appraisers proposed candidates to serve as the necessary "third independent appraiser." *Id.* ¶¶ 188–99; JT Agreement at 9. The appraisers did not agree on a candidate, and by the end of September 2023, discussion concerning the issue allegedly ceased. Am. Compl. ¶ 201. Although the parties subsequently attempted to negotiate their separation without an appraiser, Zync claims that those talks failed by November 2023. *Id.* ¶¶ 202–03.

3

Since that time, RHM has not provided Zync with any of the income derived from the Term Assets, nor has it allowed Zync to otherwise profit from the assets. *Id.* ¶¶ 223–28. RHM has continued to use the Mark and Zync's website, also without compensating Zync. *Id.* ¶¶ 229, 241.

Zync commenced this action in May 2024, claiming, *inter alia*, breach of contract, fraudulent inducement, unjust enrichment, and trademark infringement. ECF No. 1 ¶¶ 179–235. In August, RHM moved to compel appraisal and to stay the action pending appraisal. ECF No. 29. The next month, Zync amended its complaint, and RHM moved to dismiss. Am. Compl.; ECF No. 51. Three days later, RHM moved to adjourn discovery pending the Court's decision on its motion to compel appraisal. ECF No. 56. A week after that latest motion was fully briefed, RHM wrote the Court again, arguing that Plaintiff's allegedly burdensome requests for discovery made the need for a stay even more urgent. ECF No. 61 at 1. By order dated October 25, 2024, the Court stayed discovery while it considered the instant motion. ECF No. 62.

## LEGAL STANDARD

Pursuant to Section 7601 of the New York Civil Practice Law and Rules, "appraisal agreements are to be enforced by the same methods as arbitration agreements."[3] *Questrom v. Federated Dep't Stores, Inc.*, 41 F. Supp. 2d 294, 307 (S.D.N.Y. 1999), *aff'd*, 2 F. App'x 81 (2d Cir. 2001) (summary order). The same is true under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq*. *See Milligan v. CCC Info. Servs. Inc.*, 920 F.3d 146, 152 (2d Cir. 2019). In deciding a motion to compel arbitration, a court applies a "standard similar to that applicable for a motion for summary judgment." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). It "consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions,

---

[3] The JT Agreement specifies that New York law governs its interpretation. JT Agreement at 15.

4

answers to interrogatories, and admissions on file, together with . . . affidavits." *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)).  As with a motion for summary judgment, the Court "draw[s] all reasonable inferences in favor of the non-moving party." *Id.*

## DISCUSSION[4]

### I.    Appraisal

RHM contends that the Court must enforce the JT Agreement's appraisal provision under New York state law and the FAA.  Def. Mem. at 5–11, ECF No. 30.  Section 7503 of the New York Civil Practice Law and Rules provides that "[a] party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration," and "[w]here there is no substantial question" that a "valid agreement was made or complied with" and no other statutory limitation applies, the court "shall direct the parties to arbitrate."  The corresponding section of the FAA states that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

The JT Agreement clearly contemplates that the Term Asset Purchase Price will be evaluated through an appraisal process, in other words, through arbitration.  *See* JT Agreement at 9 (stating that RHM and Zync "shall each appoint a reputable third[-]party appraiser to determine the Term Asset Purchase Price" and that "[i]f the two appraisers cannot agree upon the value of

---

[4] The Court has federal question jurisdiction over Zync's Lanham Act claim even though Zync "is only entitled to [a Lanham Act remedy] 'on a prior showing of contractual entitlement,' i.e., even if the [C]ourt must first resolve a state law issue," here, whether RHM had a contractual right to the Mark after the expiration of the JT Agreement's term.  *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 623 F.3d 61, 69 (2d Cir. 2010) (quoting *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 349 (2d Cir. 2000)).  The Court exercises supplemental jurisdiction over the remainder of Zync's claims.  *See* 28 U.S.C. § 1367(a).

the Term Asset Purchase Price, they shall each render a separate written report and shall appoint a third independent appraiser, who shall appraise the Term Asset Purchase Price, determine the value thereof, and . . . render a written report of his opinion thereon"). Zync acknowledges that the JT Agreement contains an arbitrable issue, but it contends that RHM waived its right to appraisal by failing to take "any further steps in the appraisal process" after the parties reached an "impasse," appointing an investment advisory firm rather than a "reputable third[-]party appraiser," and refusing to agree to Zync's proposed third appraiser after the first two appraisers disagreed about the Term Asset Purchase Price. ECF No. 36 at 7–8.

Zync is correct that a party's right to enforce an appraisal agreement "must be exercised within a reasonable period, depending upon the facts of the particular case." *Zarour v. Pac. Indem. Co.*, 113 F. Supp. 3d 711, 716 (S.D.N.Y. 2015) (quoting *Chainless Cycle Mfg. Co. v. Sec. Ins. Co. of New Haven*, 62 N.E. 392, 394 (N.Y. 1901)). When evaluating the timeliness of an appraisal demand, New York courts consider: (1) "whether the appraisal sought is 'impractical or impossible,'" *i.e.*, whether it would prejudice the opposing party, (2) "whether the parties engaged in good-faith negotiations over valuation" before the appraisal demand, and (3) "whether an appraisal is desirable or necessary under the circumstances." *Amerex Grp., Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 201 (2d Cir. 2012) (citation omitted). Ultimately, "New York public policy favors an appraisal proceeding over a trial on damages, and under New York law, waiver of the right to an appraisal is not lightly inferred." *Id.* at 199 (citation omitted).

The Court concludes that RHM has not waived its right to an appraisal. Although RHM certainly could have made an earlier demand, plenty of courts have determined that the onset of litigation does not automatically waive a party's right to enforce an appraisal agreement. *See, e.g.*, *id.* at 201 (explaining that the initiation of a lawsuit does not necessarily imply waiver,

6

"particularly where investigation or mediation of the dispute is still ongoing when the litigation is filed"); *Victor's Café 52nd St., Inc. v. Travelers Indem. Co. of Am.*, No. 22 Civ. 7223, 2023 WL 3871887, at *2 (S.D.N.Y. May 22, 2023); *cf. Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (finding that a party waived arbitration when it did not "invoke[] the arbitration clause at the outset of the litigation" but rather engaged in the "energetic pursuit of discovery").  And although the JT Agreement implies that the appraisal was supposed to be completed within 120 days following the end of the contract's term, *see* JT Agreement at 9, that deadline is not "of the essence" to the JT Agreement, so its lapse is not sufficient to constitute waiver.  *See Nat'l Planning Corp. v. Achatz*, No. 02 Civ. 196, 2002 WL 31906336, at *2 n.11 (W.D.N.Y. Dec. 17, 2002) (quoting *Compania Portorafti Commerciale, S.A. v. Kaiser Int'l Corp.*, 616 F. Supp. 236, 238 (S.D.N.Y. 1985)); *see also Breathe LLC v. White Fox Ventures, Inc.*, 268 F. Supp. 3d 510, 514 (S.D.N.Y. 2017) ("In the absence of a time of the essence clause or special circumstances, a party can make time of the essence only by giving a distinct, clear and unequivocal notification to that effect." (citation omitted)).

Furthermore, it appears that RHM and Zync had continued to negotiate a mutually agreeable separation until shortly before Zync filed suit.  *See* ECF No. 20-1 (April 2024 email chain between counsel for RHM and Zync discussing Term Asset valuation and possible mediation); ECF No. 41-6 (February 2024 email chain between counsel for RHM and Zync discussing possible mediation); ECF No. 41-7 (same).  The Court is sympathetic to Zync's desire for a timely resolution of this dispute, but Zync does not argue that submitting to the appraisal process would cause it prejudice; in fact, a third-party appraiser could evaluate the Term Asset Purchase Price before a jury could generate a damages estimate in this action.  Finally, considering the centrality of the Term Asset Purchase Price to the ultimate resolution of Zync's

7

claims, in addition to the prospect of settlement, an accurate appraisal of the Term Assets is both "desirable" and "necessary." *Amerex Grp.*, 678 F.3d at 201 (citation omitted). The Court, therefore, orders appraisal of the Term Assets.

II.     Stay of Action

Section 7503(a) of the New York Civil Practice Law and Rules provides that, if an application to compel arbitration is granted, "the order shall operate to stay a pending . . . action, or so much of it as is referable to arbitration." Likewise, the FAA mandates that a court, after referring an arbitrable issue to arbitration, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Courts may "sever arbitrable causes of action from nonarbitrable causes of action where judicial economy would not be served by their consolidation, and where there is no danger of inconsistent rulings by the arbitrator and the court, or where there is no potential that the determination of the arbitrable causes of action would dispose of or significantly limit the issues involved in the nonarbitrable causes of action." *Weiss v. Nath*, 97 A.D.3d 661, 663 (N.Y. App. Div. 2012). Nevertheless, "[w]here arbitrable and nonarbitrable claims are inextricably interwoven, the proper course is to stay judicial proceedings pending completion of the arbitration, particularly where . . . the determination of issues in arbitration may well dispose of nonarbitrable matters." *Cnty. Glass & Metal Installers, Inc. v. Pavarini McGovern, LLC*, 885 N.Y.S.2d 288, 289 (N.Y. App. Div. 2009) (citation omitted). The decision to stay such nonarbitrable claims pending arbitration "is a matter largely within the district court's discretion to control its docket." *GateGuard, Inc. v. Goldenberg*, 585 F. Supp. 3d 391, 403 (S.D.N.Y. 2022) (quoting *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 856 (2d Cir. 1987)).

Here, certain of Zync's claims are "inextricably interwoven" with the Term Asset Purchase Price. *Cnty. Glass*, 885 N.Y.S.2d at 289 (citation omitted). Claims 1 (breach of contract), 2 (breach of the implied covenant of good faith and fair dealing), 4 (conversion), and 9 (accounting) all explicitly refer to the Term Assets' value, and their resolution consequently depends on the appraisal. Am. Compl. ¶¶ 259, 267, 283–84, 327. Although the remaining claims arguably do not depend on the outcome of appraisal, the issue of the Term Asset Purchase Price "predominate[s]" in this dispute. *Nilsen v. Prudential-Bache Sec.*, 761 F. Supp. 279, 288 (S.D.N.Y. 1991). For example, Claims 7 (trademark infringement under the Lanham Act) and 8 (state law unfair competition) concern RHM's failure to compensate Zync for use of the Mark, Am. Compl. ¶¶ 305–25, but compensation was due "simultaneously with the Term Asset Purchase Price," JT Agreement at 10, which has not yet been ascertained. Similarly, Claim 3 (fraudulent inducement) concerns the incentive structure established in the parties' amendment to the JT Agreement, but Zync's requested remedy includes "a declaration that the Term Asset Purchase Price is not subject to deduction." Am. Compl. ¶ 276. Such a remedy would lack meaning if the Term Asset Purchase Price were still undetermined.

Finally, judicial economy also favors a stay. *See Weiss*, 97 A.D.3d at 663. Once the parties determine the value of the Term Assets, they will be more likely to reach a settlement on the balance of Zync's claims, and the discovery necessary to analyze the value of the Term Assets is sure to overlap with the discovery needed to assess Zync's other claims. *See* Am. Compl. ¶¶ 269–86, 326–30; *see also* Def. Mem. at 8; ECF No. 61 (letter from RHM explaining that many of Zync's requests for production "relate in some way to the valuation issue"); *Winter Invs., LLC v. Panzer*, No. 14 Civ. 6852, 2015 WL 5052563, at *11 (S.D.N.Y. Aug. 27, 2015)

("A discretionary stay is particularly appropriate where there is significant factual overlap between the remaining claims and the arbitrated claims.").

The Court, therefore, stays the entirety of this litigation pending the results of the appraisal. RHM is advised, however, that the Court will not tolerate dilatory tactics on its part; if RHM attempts to delay the resolution of the appraisal or otherwise inhibits the timely disposal of this action, the Court may lift the stay on the litigation of those claims not inextricably intertwined with the determination of the Term Asset Purchase Price.

## CONCLUSION

For the foregoing reasons, RHM's motion to compel appraisal of the Term Assets and to stay the remainder of the litigation pending that appraisal is GRANTED. This case is STAYED pending the result of the appraisal. By **December 20, 2024**, the parties' appraisers shall appoint a third independent appraiser, who must appraise the Term Assets. If the appraisers are unable to come to an agreement within the designated time, either party may request that the Court select the third appraiser.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 29, 32, 45, and 51. RHM may renew its motion to dismiss after the appraisal is completed.

SO ORDERED.

Dated: November 19, 2024
New York, New York

_____
ANALISA TORRES
United States District Judge